# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALEXANDRIA STOCKMAN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 14 C 6862 |
| GLOBAL CREDIT & COLLECTION CORP. and CITIBANK USA, N.A., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Alexandria Stockman sued Global Credit & Collection Corporation and Citibank USA, N.A. under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, and the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, asserting claims arising from their attempts to collect a debt from her in 2014. On March 27, 2015, the parties reached an agreement to settle the dispute for a fixed amount to be paid to plaintiff plus plaintiff's reasonable attorney's fees and costs to be determined by the Court. For the reasons stated below, the Court awards plaintiff attorney's fees in the amount of $14,366.25 and costs in the amount of $445.00.

## Background

As indicated above, Stockman sued two defendants, Global and Citibank, on September 5, 2014. In her complaint, Stockman alleged that defendants had made phone calls to unauthorized phone numbers and third parties in an effort to collect on an outstanding debt she owed to Citibank. Count one of her complaint accused Global and

Citibank of calling her cellular telephone, the number for which she had not provided to defendants, for a non-emergency purpose and without her consent in violation of the TCPA. See 47 U.S.C. § 227(b). Count two accused Global alone of violating the FDCPA by contacting Stockman's father and stepmother two times. Stockman alleged that Global's first call was an impermissible attempt to collect a debt by calling a third party in violation of 15 U.S.C. § 1692c(b). She further alleged that even if the first call was a lawful call to a third party to acquire a debtor's location information, the second call directly violated 15 U.S.C. § 1692b(3), which prohibits more than one such call unless, among other things, "the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information."

Global and Citibank answered Stockman's complaint on October 22, 2014, denying virtually all of Stockman's allegations and asserting a variety of affirmative defenses. The parties met in early November for their Rule 26(f) conference. A week later, Stockman moved to strike several of the denials and affirmative defenses contained in Global and Citibank's answers. Global and Citibank filed amended answers and affirmative defenses on November 26, 2014. The parties then exchanged one round of written discovery requests.

At various points over the course of the litigation, each side made fruitless settlement offers or demands that the other side thought unreasonable. Stockman proffered two settlement demands in late September, which Global rejected without making a counteroffer. Global made an offer of judgment on the FDCPA claims in early November, which Stockman rejected without making a counteroffer. Stockman again

made a settlement demand in late February, and Global again rejected Stockman's demand without making a counteroffer.

On March 27, 2015, the Court held a settlement conference. Defendants agreed to pay Stockman $6,000 to settle all claims. They also agreed, pursuant to the FDCPA's fee shifting provision, that Stockman would recover reasonable attorney's fees and costs as determined by the Court.

Stockman has petitioned the Court for fees totaling $21,712.80 and costs totaling $445.00. Global stipulates to the amount of costs. It contends, however, that Stockman seeks excessive fees. Specifically, Global argues that the proposed hourly rates for Stockman's attorneys are unreasonable and that the attorneys did not adequately adjust their bills to account for time spent on the claims brought under the TCPA, which does not include a fee-shifting provision. Global proposes a total fee award of $6,458.25.

**Discussion**

Stockman has provided a detailed listing of attorney's fees accumulated throughout the litigation and documents supporting the rates she has requested. She seeks costs and fees totaling $22,157.80. This includes the following:

- attorney Michael Wood's 45.6 hours of work performed at a proposed rate of $327 per hour, minus 5.0 hours of work on matters that specifically reference Stockman's claims against Citibank and Global under the TCPA;
- attorney Bryan Thompson's 21 hours of work performed at a proposed rate of $327 per hour, plus 4.3 additional hours spent drafting Stockman's reply brief in support of her fee petition, minus 0.1 hour of work on purely TCPA-related matters;

3

- attorney Mario Kasalo's 0.6 hours of work, performed at a $375 per hour rate but incorrectly attributed to Wood and calculated as though he bills at a $327 per hour rate; and
- costs totaling $445.00.

Global does not dispute the proposed award of $445.00 in costs. It challenges Stockman's proposed fee award of $21,712.80 on two grounds. First, Global asserts that Stockman's attorneys' hourly rates are unreasonable. Second, Global contends that Stockman's attorneys failed to properly exclude matters related to Stockman's claims under the TCPA, which does not provide for fee shifting.

**A.  Reasonable hourly rates**

When calculating an award of attorney's fees under the FDCPA, the Court begins by calculating the lodestar—the attorney's reasonable hourly rate multiplied by the number of hours reasonably worked. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court may then adjust this figure in consideration of various factors, including "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010); *see also Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995).

An attorney's reasonable hourly rate is the market rate for the services the attorney has performed. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). The Seventh Circuit has indicated that the best evidence of market rate is the attorney's normal billing rate for paying clients, *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012), and that an "attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Uphoff v. Elegant Bath, Ltd.*, 176

F.3d 399, 407 (7th Cir. 1999). Where the Court cannot determine the attorney's actual billing rate, it may look to the "next best evidence" of market rate: the rate charged "by lawyers in the community of reasonably comparable skill, experience, and reputation." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 909–10 (7th Cir. 2007) (internal quotation marks omitted). Ultimately, "market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Uphoff*, 176 F.3d at 407.

The party seeking fees bears the burden of proving the reasonableness of both the rate charged and the number of hours worked. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). If the fee petitioner meets this burden with regard to the proposed hourly rate, the opposing party then must demonstrate why a lower rate is more appropriate. *Id.* at 555. If the petitioner does not carry her burden, the Court "has the authority to make its own determination of a reasonable rate." *Pickett*, 664 F.3d at 640; *see also Uphoff*, 176 F.3d at 409.

As an initial matter, Stockman's attorneys failed to correctly calculate Kasalo's and Wood's hours and fees, and Stockman only attempted to justify Kasalo's rate in her reply brief. Moreover, neither the total proposed in her fee petition nor the total proposed in her reply accounts for any adjustment based on Kasalo's higher rate. The Court therefore treats Kasalo's proposed hourly rate the way Stockman does in her fee petition and both summaries: $327 per hour, equal to Wood's and Thompson's proposed rates.

Stockman argues that the hourly rate for each of her two primary attorneys, Wood and Thompson, should be $327 and that this rate is reasonable for the work

5

done.  In addition to affidavits from her attorneys, Stockman supports these assertions in several other ways.  First, she has provided the affidavit and representation agreement of Candice Cunningham, a fee-paying client of Wood and Thompson's firm.  Both documents are dated May 12, 2015, after the settlement and three days before Stockman filed the fee petition, and both state that Cunningham will pay $327 per hour to both Wood and Thompson.  Neither document indicates that Cunningham's suit is at all similar in kind or scope to Stockman's or that any payments have yet been made.

Second, Stockman has provided a fee agreement between Wood and Thompson's firm and Angie Ruge, a fee-paying client.  This fee agreement states that each attorney's hourly rate is $327, but it does not give any indication whether Ruge's legal matters are similar to Stockman's.  Stockman includes no other supporting documents with this fee agreement, and the agreement is undated.

Third, Stockman has submitted an affidavit from attorney Ryan Callahan stating that he has hired Wood as a consultant in two FDCPA cases in the District of Kansas for an hourly fee of $327.

Fourth, Stockman has cited recent decisions in this district in which courts have deemed reasonable Wood's and Thompson's $327 hourly rate.  *See Spruce v. Midland Funding LLC, Inc.*, No. 14 C 1316 (N.D. Ill. June 6, 2015); *Vaughn v. Acct. Recovery Serv., Inc.*, No. 14 C 8179 (N.D. Ill. Apr. 24, 2015); *Rockafellow v. Grant & Weber Inc.*, No. 14 C 7148 (N.D. Ill. Oct. 15, 2014); *Khalil v. Contract Callers, Inc.*, No. 14 C 5359 (N.D. Ill. Aug. 21, 2014).  In only one of these cases was the rate calculation actually litigated.  *See Spruce*, No. 14 C 1316.  In the others, the courts were not presented with any argument against the reasonableness of the proposed rates.

Fifth and finally, Stockman supports the reasonableness of her attorneys' rates by referencing the 2013–2014 United States Consumer Law Attorney Fee Survey Report and arguing that her attorneys' rates are well below the Chicago market's "median attorney rate for all attorneys," which is $438 per hour.

Stockman has not carried her burden to demonstrate that the hourly rate she requests for her attorneys is a reasonable one. First, the fee agreements and affidavits Stockman has provided to support her fee petition do little to show that $327 per hour is a reasonable market rate for the services Wood and Thompson have provided. It is true that the Seventh Circuit has held that the "best evidence of whether [an] attorney's fees are reasonable is whether a party has paid them." *Cintas Corp. v. Perry*, 517 F.3d 459, 469–70 (7th Cir. 2008). But the Cunningham representation agreement and affidavit were signed after the present case was settled and three days before the fee petition was filed. And at most, they evidence a client's intent to *eventually* pay Wood and Thompson $327 per hour. Similarly, it is impossible to determine from the face of the undated Ruge fee agreement whether Ruge has ever actually paid Wood and Thompson $327 per hour. Perhaps more importantly, there is no evidence suggesting that the type of work Ruge and Cunningham hired Wood and Thompson to perform is similar in kind and scope to the work for which Stockman enlisted their services. The same can be said of Callahan's affidavit, which arguably demonstrates Wood's value as a consultant in faraway FDCPA cases but does not shed light on the value of his services as primary counsel in this local case.

Stockman's reliance on the Fee Survey Report is likewise problematic. The Seventh Circuit has observed mixed opinion within the legal community regarding the

utility of reliance in individual cases on reports like this and the Laffey Matrix. *See Pickett*, 664 F.3d at 649–51. This Court has expressed skepticism about the value of such sources. *See Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1040 (N.D. Ill. 2013); *Jimenez v. City of Chicago*, No. 09 C 8081, 2012 WL 5512266, at *5–6 (N.D. Ill. Nov. 14, 2012). Yet even if the Court thought the Fee Survey Report illuminating, it would remain unpersuaded by Stockman's argument that the proposed rates for Wood and Thompson are reasonable on the ground that they are less than the overall median rate in Chicago. The information in the report is not focused on lawyers who handle cases similar to this one. In any event, reasonableness is not determined by averaging the rates charged by all attorneys in a certain geographic area. Rather, it involves more focused factors, including "the experience, reputation, and ability of the plaintiff's attorney" and "the novelty and difficulty of the question." *Tolentino*, 46 F.3d at 652. The Court also notes that Wood and Thompson's combined experience of roughly four years is significantly less than the median in Chicago (seventeen years). In sum, this source has scant value in assessing reasonableness.

Global's arbitrary counterproposal fares no better. Global, also relying on the Fee Survey Report, recommends that the Court should peg each of Stockman's attorneys' rates to the median rate for lawyers of comparable experience in years. Under Global's approach, Wood's reasonable rate would be $205 (the median for attorneys with less than a year of experience), and Thompson's rate would be $238 (the median for attorneys with one to three years of experience). Global makes no attempt, however, to explain why the reasonable rates for these particular attorneys are equal to the median for all local attorneys with the same number of years under their belts. In

8

short, Global's approach, like Stockman's, is not sufficiently focused.

Lastly, Stockman contends that the Court should find Wood's and Thompson's $327 hourly rate reasonable because other judges in this district have already done so. Global argues that because these determinations have been made in non-adversarial settings, the Court should not consider them. There are two problems with this argument. The first is that it is incorrect; at least one judge in this district has held Wood's and Thompson's $327 hourly rate reasonable despite the defendant's objections to the contrary. *See Spruce*, No. 14 C 1316. The second is that the Seventh Circuit has held otherwise. *See Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 491 (7th Cir. 2009) ("Nothing in the case law requires that a party show that the hourly rate they have requested has previously been disputed and upheld.").

Still, the fact that other judges have deemed this rate reasonable is simply one factor to be considered alongside many others, and the balance of factors indicates that the $327 hourly rate Stockman seeks for her primary and secondary attorneys is unreasonably high. One need look no further than the third attorney, Kasalo, to recognize the incongruity of Stockman's position. Kasalo has been admitted to practice for almost eight years; he has extensive experience with FDCPA cases; and this Court recently found that his reasonable hourly rate is $375. *See Kasalo v. Trident Asset Mgmt., LLC*, No. 12 C 2900, 2015 WL 2097605, at *3 (N.D. Ill. May 3, 2015). The Court finds unpersuasive the notion that the services of an attorney with significantly more substantial credentials are worth only 15% more than the services of lawyers whose combined experience is less than half of his.

The Court acknowledges that Wood and Thompson did fine work in this case and successfully negotiated a settlement resulting in a substantial payment to Stockman. Although the $327 per hour rate these attorneys have requested is unreasonably high, the quality of their representation of Stockman and the results they achieved for her merit something close to that. Accordingly, the Court will calculate the lodestar by assessing a reasonable market rate of $300 per hour for each attorney.

**B.    Hours worked**

Although the FDCPA provides for fee shifting, the TCPA does not. Because the hours devoted to pursuing a TCPA claim are not compensable under the TCPA, Stockman's attorneys have taken the preemptive measure of reducing or completely removing from their fee bill all but one charge for which the billing descriptions expressly mention the TCPA or Citibank (against whom Stockman brought only a TCPA claim). The single entry that references Citibank but that counsel did not deduct is attributed to Wood, who billed 0.5 hours "[r]eceiv[ing], review[ing] and not[ing] GCC and Citi amended answers to complaint" on November 26, 2014. The Court excludes half of this entry from the fee bill in assessing the fees Global must pay.

Even with this additional exclusion, Stockman requests an award for 61.85 of the 67.2 hours her attorneys billed prosecuting this case. Global argues that because Stockman did not accept an offer of judgment on the FDCPA claim in November and thus delayed settlement until March, the TCPA had to have been the predominant claim in the lawsuit, making Stockman's minor fee reductions inadequate. Global also argues that by making settlement demands for unreasonable amounts, Stockton unnecessarily prolonged the litigation. Global accordingly suggests that the Court should find only a

10

third of Stockman's attorneys' fees attributable to FDCPA work.  Global's argument is misplaced.  First, the proportion it proposes is pulled from thin air and inadequately justified.  Second, refusal to accept an offer of judgment on one claim does not amount to evidence of the greater importance of another, at least not in these circumstances.  And third, If Stockman is guilty of refusing to settle for an amount it thought unreasonable, then so is Global.  The bottom line is that the Court is not persuaded that either party bears a greater share of responsibility for the time it took to finally resolve this dispute.

The Court likewise finds Stockman's approach inappropriate.  Excluding only 7.96% of her attorneys' hours simply because that was the frequency with which they referenced Citibank or the TCPA in their bills does not result in a fair measure of the time attributable only to the TCPA claims.  Under *Hensley*, an attorney's time is compensable even for work done on non-fee-shifting claims if those claims are based on a common body of facts or law supporting claims under a fee-shifting statute.  461 U.S. at 434–35.  Stockman's claims do not fit this description.  Stockman alleged a TCPA claim based on phone calls to her cellular phone and FDCPA claims based on phone calls to her parents.  No phone call was alleged to have violated both statutes.  There was minimal factual overlap and no legal overlap between Stockman's TCPA claim and her FDCPA claims.

Stockman's attorneys were not particularly careful to segregate their time between non-compensable and compensable work, but it is reasonable to infer, and the Court does infer, that more than 7.96% of their time is properly attributable to work on the TCPA claim alone.  Counsel represented to the Court during pretrial supervision of

the case and the settlement conference that the TCPA was a significant aspect of her case. At least some of the unsegregated tasks that counsel performed had to have advanced the TCPA claim rather than the FDCPA claim. For this reason, and due to counsels' inadequate segregation of their time, the Court believes that a 25% reduction is warranted over and above the relatively minor reductions counsel have already made.

Finally, Stockman has requested that the award include fees accumulated during the 4.3 hours Thompson spent drafting the reply brief on the fee petition. The Court notes that in the initial fee bill, Thompson and Wood billed a cumulative total of 3.7 hours combined to research case law, draft the fee petition, contact Callahan and secure his agreement to make a sworn declaration, review and revise the petition, and compile all exhibits for filing. Considering the fact that reply briefs are not vehicles to interject new arguments, it is unreasonable for the reply to have taken this much more time than the petition itself. The Court will therefore award only 2.0 hours for Thompson's work on the reply brief.

To summarize: Stockman's attorneys billed 67.2 hours at $327 per hour. They then excluded 5.1 hours of work in which their bills mentioned the TCPA and Citibank, submitting a fee bill requesting compensation for 62.1 hours, and the Court has excluded an additional 0.25 hours that Stockman's attorneys failed to reduce or exclude. Thompson's properly compensable work on the reply brief increases that total to 63.85 hours. A general reduction of 25% places the final tally at 47.8875 compensable hours.

**Conclusion**

For the foregoing reasons, the Court grants plaintiff motion for attorney's fees and costs [dkt. no. 40] and awards plaintiff's attorney's fees in the amount of $14,366.25

and costs in the amount of $445.00.

                                                     _____
                                                         MATTHEW F. KENNELLY
                                                       United States District Judge

Date: August 21, 2015